UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY EDWARDS,<br><br>    Plaintiff,<br><br>  v.<br><br>FCA US LLC,<br><br>    Defendant. | Case No. 22-cv-01871-WHO<br><br>**ORDER DENYING MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Re: Dkt. No. 14 |

## INTRODUCTION

Plaintiff Stanley Edwards has brought six federal, state, and common law claims against defendant FCA US LLC ("FCA"), arising from FCA's sale of an allegedly defective Jeep Cherokee. This motion involves FCA's efforts to dismiss the sixth cause of action for "Fraudulent Inducement – Concealment" and to dismiss or strike Edwards's claim for punitive damages. Because I conclude that the fraud claim is adequately pleaded and that it is not barred by the economic loss rule, I **DENY** FCA's motion to dismiss and its derivative motion to dismiss or strike Edwards's claim for punitive damages.

## FACTUAL AND PROCEDURAL BACKGROUND

In or around April of 2018, Edwards purchased a 2019 Jeep Cherokee ("Jeep") from FCA. Complaint ("Compl.") [Dkt. 1] ¶ 9. At that time, Edwards entered into a warranty contract with FCA that contained various warranties, including, among other things, a bumper-bumper warranty, powertrain warranty, and emission warranty. *Id.* ¶ 10.

According to the Complaint, the Jeep suffers from a dangerous defect in the Powertrain Control Module ("PCM") that may result in stalling or sudden loss of power, including while the Jeep is moving at highway speeds. *Id.* ¶¶ 17–18. FCA allegedly knew about the stalling defect

and its concomitant safety risks prior to April 2018 but intentionally concealed them from its sales representatives and Edwards at the time of sale. *Id.* ¶ 21. Had Edwards known about the stalling defect, he would not have purchased the Jeep. *Id.* ¶¶ 22, 25.

FCA has allegedly issued various technical service bulletins and recalls which inaccurately purported "to be able to fix various symptoms of the defects." *Id.* ¶¶ 28–35, 57. As a result of these technical bulletins and recalls, Edwards alleges that he "did not become suspicious of Defendant's concealment of the latent defects and its inability to repair it until January 2020, when the issue persisted following Defendant's representations that the Vehicle was repaired." *Id.* ¶ 58. The Complaint alleges that Edwards requested buyback and/or restitution from FCA "in or around January 2020" and "in or around March 2021," but FCA has not provided restitution. *Id.* ¶¶ 46, 61, 66.

On March 24, 2022, Edwards filed suit against FCA, raising six causes of action arising from the allegedly defective Jeep. *Id.* ¶¶ 67–108. Edwards brings four claims under the Song-Beverly Consumer Warranty Act, a fifth claim under the federal Magnusson-Moss Warranty Act, and a sixth cause of action for "Fraudulent Inducement – Concealment." *Id.* Edwards seeks actual, consequential and incidental damages, restitution, civil penalties, and punitive damages, among other things. *Id.* at Prayer.

On April 18, 2022, FCA moved to dismiss Edwards's fraud claim on the grounds that it is inadequately pleaded and because it is purportedly barred by the economic loss rule. Motion to Dismiss ("MTD") [Dkt. 14-1] at 6. FCA also moved to dismiss or strike Edwards's claim for punitive damages because "Plaintiff's claim for punitive damages fails with their [*sic*] fraud claim." *Id.* FCA does not challenge Edwards's other claims.

**LEGAL STANDARD**

I.   **MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

On a motion to dismiss for failure to state a claim, the court accepts all factual allegations as true and "draw[s] all reasonable inferences" in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

## II. MOTION TO STRIKE UNDER RULE 12(f)

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). In addition, courts often require some showing of prejudice by the moving party before granting a motion to strike. *Hernandez v. Dutch Goose, Inc.*, No. 13-cv-03537, 2013 WL 5781476, at *5 (N.D. Cal. Oct. 25, 2013). In resolving a motion to

1  strike, the court views the pleadings in a light most favorable to the nonmoving party. *Platte*
2  *Anchor Bolt*, 352 F. Supp. 2d at 1057.

## DISCUSSION

FCA has moved to dismiss the "Fraudulent Inducement – Concealment" claim on the grounds that it is inadequately pleaded and because it is purportedly barred by the economic loss rule. MTD at 6. Edwards opposes both grounds. In his opposition brief, Edwards characterizes his claim as both "fraudulent inducement" and "fraud by omission." Opposition to Motion to Dismiss ("Opp.") [Dkt. 19] at 2, 6.

### I. THE FRAUD CLAIM SURVIVES FCA'S CHALLENGE

#### A. The Fraud Claim Is Adequately Pleaded.

FCA argues that Edwards cannot "demonstrate essential elements" for his fraudulent inducement – concealment claim. MTD at 14. "To prove a claim of fraudulent inducement, a plaintiff must show (a) a misrepresentation, false representation, concealment or nondisclosure, (b) knowledge of falsity; (c) intent to defraud or to induce plaintiff to enter into a contract; (d) justifiable reliance; and (e) resulting damage." *Cream v. N. Leasing Sys., Inc.*, No. 15-cv-01208-MEJ, 2015 WL 4606463, at *5 (N.D. Cal. July 31, 2015) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). "Fraud in the inducement . . . occurs when the promisor knows what he is signing but his consent is induced by fraud." *FormFactor, Inc. v. MarTek, Inc.*, No. 14-cv-01122-JD, 2015 WL 367653, at *5 (N.D. Cal. Jan. 28, 2015) (quoting *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996)). "When a plaintiff's consent was induced by fraud, the contract is voidable and can be rescinded by the plaintiff to avoid her obligation." *Delk v. Ocwen Fin. Corp.*, No. 17-cv-02769-WHO, 2017 WL 3605219, at *7 (N.D. Cal. Aug. 21, 2017).

Fraudulent omission and fraudulent concealment claims are analytically synonymous. *See Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2020 WL 1955643, at *23 n.16 (N.D. Cal. Apr. 23, 2020) (comparing tests for fraudulent omission and fraudulent concealment). "Under California law, a claim of fraud by omission requires a showing of (1) the concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional

4

concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages." *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021) (internal quotation omitted).

In its motion to dismiss, FCA appears to attack the second and fifth elements of the fraud claim based on the fraudulent concealment / fraud by omission test. FCA specifically contends that Edwards failed to plausibly allege that FCA that FCA had "exclusive knowledge" of the alleged stalling defect, that FCA "concealed" or "suppressed" facts related to the stalling defect, and that Edwards sustained damages as a result of the concealment or suppression of facts. MTD at 15–16. I address each argument below.

### 1. FCA's Duty to Disclose

To state a claim for fraud by omission, Edwards must plausibly allege that FCA had a duty to disclose the omitted fact (here, information regarding the stalling defect) to him. *Lewis*, 851 F. App'x at 725. A duty to disclose can arise in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Meyers v. BMW of N. Am., LLC*, No. 16-cv-00412-WHO, 2016 WL 5897740, at *3 (N.D. Cal. Oct. 11, 2016) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007)). Edwards argues that both the second and third grounds—exclusive knowledge and active concealment—are met here.

#### a. Exclusive Knowledge

To establish exclusive knowledge of the stalling defect, Edwards must allege specific facts that he claims should have alerted FCA that the Jeep was defective. *Taragan v. Nissan N. Am., Inc.*, No. 09-cv-3660 SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) ("To satisfy Rule 9(b), Plaintiffs must allege specific facts that they claim should have alerted Nissan that the Intelligent Key system design was, in fact, defective."). He has done so here. *See, e.g.*, Compl. ¶¶ 24, 27 (alleging that FCA "routine[ly] monitor[s]" customer complaints and that FCA was "inundated with complaints" regarding the stalling defect).

5

FCA bases its arguments against exclusive knowledge on the grounds that there was public knowledge about the stalling defect. MTD at 14–15.[1] From FCA's perspective, Edwards cannot plausibly allege that FCA had "exclusive knowledge" of the stalling defect because the Complaint includes allegations regarding FCA's recalls and customer complaints related to the stalling defect. *Id.* FCA contends that such allegations "necessarily negate" Edwards's theory that FCA had exclusive knowledge of the stalling defect. *Id.* at 15.

The problem with FCA's reasoning is that "exclusive knowledge" does not mean that the facts were known or accessible only to FCA. "A defendant has exclusive knowledge giving rise to a duty to disclose when 'according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover.'" *Elias v. Hewlett-Packard Co.*, No. 12-cv-00421-LHK, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) (quoting *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013)). In other words, "[t]he defendant need not have literally been the sole holder of the knowledge. It is generally sufficient for defendants to have had 'superior knowledge' and for the information to have not been reasonably discoverable by the plaintiffs." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1014–15 (N.D. Cal. 2020). As a result, "even the presence of the information from publicly available sources—for instance, online—does not automatically foreclose an exclusive-knowledge claim." *Id.*; *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (same). Instead, courts have looked to the nature of the product, the nature of the alleged omission, and the difficulty in reasonably finding the omitted information from sources other than the defendant. *See Anderson*, 500 F. Supp. 3d at 1015; *MyFord*, 46 F. Supp. 3d at 960; *Czuchaj v. Conair Corp.*, No. 13-cv-1901, 2014 WL 1664235, at *4 (S.D. Cal. Apr. 18, 2014).

*Falk* is instructive. In that case, plaintiffs brought a claim of fraud by omission, alleging that General Motors actively concealed the existence of defective speedometers. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1093 (N.D. Cal. 2007). In the complaint, Plaintiffs described a number of consumer postings on the Internet which detailed consumer problems with

---

[1] FCA does not address materiality in its briefing or otherwise suggest that information regarding the stalling defect was immaterial. As a result, I do not discuss materiality in my opinion.

the speedometers. *Id.* at 1092. In holding that plaintiffs adequately pleaded that General Motors had exclusive knowledge, *Falk* noted that:

> It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers (as quoted in the complaint). Some may have. But GM is alleged to have *known* a lot more about the defective speedometers, including information unavailable to the public. Many customers would not have performed an Internet search before beginning a car search. Nor were they required to do so.

*Id.* at 1097 (emphasis in original).

Edwards has plausibly shown that FCA had exclusive knowledge of the stalling defect. The Complaint alleges that FCA "routine[ly] monitor[s]" complaints and that FCA was "inundated with complaints" regarding the stalling defect. Compl. ¶¶ 24, 27. The Complaint also alleges multiple sources of internal knowledge about the stalling defect, including "pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers," among other things. *Id.* ¶ 20; *see also id.* ¶ 104(a).

At this stage in the litigation, Edwards has plausibly alleged that FCA had exclusive knowledge of the stalling defect, giving rise to a duty to disclose.

### b.     FCA Actively Concealed Material Facts

A duty to disclose can also arise when the defendant actively conceals material facts. *Meyers*, 2016 WL 5897740, at *3. "Mere nondisclosure does not constitute active concealment." *Czuchaj*, 2014 WL 1664235, at *6. Instead, "a plaintiff must assert affirmative acts of concealment; e.g., that the defendant sought to suppress information in the public domain or obscure the consumers' ability to discover it." *Meyers*, 2016 WL 5897740, at *7 (quoting *Taragan*, 2013 WL 3157918, at *7).

FCA contends that Edwards has not plausibly alleged that FCA actively concealed or suppressed facts related to the alleged defects. MTD at 15. According to FCA, "Plaintiff's references to complaints and recalls that were publicly available on the [National Highway Traffic

7

Safety Administration] website, and other publicly available recalls and technical bulletins" discredit Edwards's allegations that FCA actively concealed the defects. *Id.*

Edwards responds that FCA "actively concealed material facts" by "issuing recalls and [technical service bulletins] that purported to address the Defect when they were in fact merely stop-gap measures that failed to address the underlying problems." Opp. at 13. The Complaint alleges that the technical service bulletins and recalls "purport[ed] to be able to fix various symptoms of the defects," but that these efforts did not actually fix the stalling defect. Compl. ¶¶ 28–37, 57. And even though "FCA was inundated with complaints" regarding the stalling defect, "rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect." *Id.* ¶ 27. In other words, Edwards's theory is that FCA actively concealed the stalling defect by using the updates and recalls to cover up the underlying issues with the transmission and PCM.

In other vehicle-defect cases, courts have found that such allegations may establish a duty to disclose. In *Scherer v. FCA*, for example, the plaintiff propounded the same theory of active concealment—namely, that FCA issued recalls to mask the underlying issues with the transmission and PCM that resulted in the stalling defect. *See* No. 20-cv-02009, 2021 WL 4621692, at *8 (S.D. Cal. Oct. 5, 2021) (articulating theory of active concealment based on safety recalls). *Scherer* concluded that "[g]iven these allegations, the SAC presents facts to state it is plausible Defendant actively concealed the defects because, as alleged, the U01 and T23 updates were used by Defendant to cover up the real underlying issues with the transmission and PCM." *Id.*

In *Falk*, as noted above, plaintiffs alleged that GM actively concealed the existence of defective speedometers. *Falk* found that the fact that GM replaced broken speedometers with equally defective ones "suggests that GM tried to gloss over the problems with its speedometers . . . [by] giving the impression that any defects were unique cases." 496 F. Supp. 2d at 1097 (finding active concealment adequately pleaded). And in *In re MyFord*, plaintiffs alleged that Ford actively concealed information about a defective "infotainment" system in some of its vehicles. 46 F. Supp. 3d at 946. *In re MyFord*, in the context of a motion to dismiss, found that it

8

1    would be active concealment "[i]f, as Plaintiffs allege, Ford pretended to fix the problems with
2    MFT instead of actually admitting that the problems could not be fixed." *Id.* at 961.  Finally, in
3    *Sloan v. General Motors*, the court found that allegations that General Motors issued technical
4    service bulletins that "instructed dealers to offer purported repairs that it knew would not cure" the
5    defect established at least a genuine issue of material fact as to whether General Motors actively
6    concealed information about the alleged defect.  *See Sloan*, 2020 WL 1955643, at *15–16.  After
7    surveying the vehicle-defect caselaw, including *Falk* and *MyFord*, *Sloan* concluded that "these
8    cases suggest that active concealment exists where—as here—a company implements a 'fix' it
9    knows is not effective." *Id.* at *15.

10   This case is analogous to *Scherer* and the other cases described above.  At this stage of
11   litigation, Edwards has alleged sufficient affirmative acts of concealment by FCA to give rise to a
12   duty to disclose.

### 2. Edwards's Damages

14   To state a claim for fraud, Edwards must also show that he sustained damages as a result of
15   the concealment or suppression of the stalling defect.  *Meyers*, 2016 WL 5897740, at *7.  FCA
16   argues that Edwards's claim must fail because he "has not alleged any resulting injuries."  MTD at
17   16.  Edwards responds that he has adequately pleaded damages because he alleged that he would
18   not have purchased the Jeep had he known that it was defective at the time of sale.  Opp. at 17.

19   I find that Edwards has plausibly shown that he sustained damages because of FCA's
20   concealment of the stalling defect.  The complaint alleges that the Jeep "continued to exhibit
21   symptoms of defects following Defendant FCA's unsuccessful attempts to repair [it]," and that
22   had Edwards known about the stalling defect, he "would not have purchased" the Jeep or "would
23   have paid less for it."  Compl. ¶¶ 22, 25, 61.  The complaint also alleges that Edwards sustained
24   damages in an amount that is "not less than $25,001.00" and an amount that "exceeds
25   $75,000.00." *Id.* ¶¶ 44, 53.  These allegations are sufficient to plead an injury.

26   In sum: I find that Edwards has plausibly alleged that FCA had a duty to disclose based on
27   exclusive knowledge and active concealment.  Edwards has also plausibly shown that he sustained

28

1 damages as a result of the alleged fraudulent concealment. Edwards's fraud claim thus survives
2 FCA's 12(b)(6) challenge.

### B.    Sufficiency of Allegations Under Rule 9(b).

FCA next asserts that Edwards's allegations "lack the specificity required to plead a fraud claim." MTD at 14. Edwards offers two responses. First, he contends that omission-based claims do not require the level of specificity required by an affirmative misstatement claim. Opp. at 14. Second, Edwards maintains that even though Rule 9(b) does not apply to fraudulent omission claims, he has met its heightened pleading standard. Opp. at 14–17.

I agree with Edwards that an omission-based fraud claim is subject to a lower pleading standard. "Typically, averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged, but claims based on an omission can succeed without the same level of specificity required by a normal fraud claim." *Bryde v. Gen. Motors, LLC*, No. 16-cv-02421-WHO, 2016 WL 6804584, at *13 (N.D. Cal. Nov. 17, 2016) (internal quotations omitted). "In the context of an omission-based fraud or misrepresentation claim, a plaintiff will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *Anderson*, 500 F. Supp. 3d at 1006 (quoting *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014)) (internal quotation marks omitted).

In *Bryde*, which involved fraudulent omission claims based on an alleged airbag defect, I found that plaintiffs had satisfied Rule 9(b) where "Plaintiffs have identified the 'who' (GM); the 'what' (knowing about, yet failing to disclose the alleged airbag systems defect); the 'when' (from the time of sale of the first vehicle to the present day); the 'where' (the various channels through which GM sold the Class Vehicles, including its dealers where plaintiffs purchased their vehicles); and the 'how' (if plaintiffs had known of the alleged defect, they would have not purchased or leased the Class Vehicles, or would have paid less)." 2016 WL 6804584, at *14.

Edwards has satisfied the "who, what, when, where, and how" analysis. The Complaint identifies the "who" (FCA); the "what" (knowing about, yet failing to disclose the alleged stalling defect); the "when" (at the time of purchase and thereafter); the "where" (FCA's authorized repair

10

1  facilities); and the "how" (if Edward had known of the alleged defect, he would not have
2  purchased the Jeep, or would have paid less). Edwards has satisfied Rule 9(b).

## II. THE FRAUD CLAIM IS NOT BARRED BY THE ECONOMIC LOSS RULE

FCA also argues that the economic loss rule bars Edwards's fraud claim. MTD at 9. I disagree.

The economic loss rule limits a party to a contract "to recover[ing] in contract for purely economic loss due to disappointed expectations," rather than in tort, "unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Stated differently, a party to a contract generally cannot recover for pure economic loss—*i.e.*, damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort. *See Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999) ("[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.") (internal quotation omitted). "The rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (quoting *Robinson*, 34 Cal. 4th at 988) (alteration in original).

Tort damages, however, *may* exist between entities who are in a contractual relationship if "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Erlich*, 21 Cal. 4th at 552. "Tort damages have been permitted in contract cases . . . where the contract was fraudulently induced." *Id.* at 551–52; *see also Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993) ("[W]hen one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort."); *Jacobs v. Sustainability Partners LLC*, No. 20-cv-01981-PJH, 2020 WL 5593200, at *15 (N.D. Cal. Sept. 18, 2020) (recognizing that under California law, the economic loss rule does not bar a fraud claim when a contract was fraudulently induced); *Mewawalla v. Middleman*, No. 21-cv-09700-EMC, 2022 WL 1304474, at *11–12 (N.D. Cal. May 2, 2022) (same).

11

To the extent that Edwards'ss "fraudulent inducement-concealment" claim sounds in inducement, the economic loss rule clearly does not bar his claim. *Id.*; *see also Anderson*, 500 F. Supp. 3d at 1021 ("California, moreover, recognizes that the related claim of fraudulent inducement to contract is tortious in nature and not barred by the economic loss rule."). To the extent that the "fraudulent inducement-concealment" claim is based in fraudulent concealment doctrine, the caselaw in California is unsettled. In *Robinson*, the California Supreme Court held that the economic loss rule does not bar fraud claims premised on affirmative misrepresentations. *Robinson*, 34 Cal. 4th at 991. Because the affirmative misrepresentations were "dispositive fraudulent conduct," the court expressly declined to address whether another type of fraud—intentional concealment—likewise "constitutes an independent tort" warranting an exception. *Id.*

Since *Robinson*, federal district courts have reached "opposing conclusions" as to whether "fraudulent concealment also constitutes independent tortious conduct, warranting an exception to the economic loss rule." *Rattagan*, 19 F.4th at 1191–92 (citing and collecting authorities). In light of the conflicting decisions and absence of controlling state precedent, the Ninth Circuit recently certified the question whether "fraudulent concealment claims are exempt from the economic loss rule" to the California Supreme Court. *Id.* at 1189, 1192–93.

I have repeatedly found that fraudulent omission claims are not barred by the economic loss doctrine. *See Anderson*, 500 F. Supp. 3d at 1021; *Johnson v. Glock, Inc.*, No. 20-cv-08807-WHO, 2021 WL 6804234, at *10 (N.D. Cal. Sept. 22, 2021). As I have previously explained, a fraudulent omission leading to adopting a contract is just as much "above and beyond" the breach of contract as a fraudulent affirmative misrepresentation. *Anderson*, 500 F. Supp. 3d at 1021. A fraudulent omission, additionally, is just as intentional as an affirmatively misleading misrepresentation. *Id.* In my view, "*Robinson*'s rationale applies equally well to omissions as to affirmative representations and there is no principled reason, in this context, for distinguishing between the two types of intentional misrepresentations." *Id.* at 1020.

In sum, regardless of whether Edwards'ss claim is characterized as fraud in the inducement or fraudulent concealment, I find that the economic loss rule is not a barrier.

1   FCA also argues that Edwards'ss fraud claim fails because it is "improperly duplicative" of his warranty claims. MTD at 11. According to FCA, because Edwards "failed to allege any facts to support an independent duty or damages distinct from his warranty claims," he is attempting to "recast" or "improperly cloak" his breach of warranty claims into a tort claim. *Id.* at 12–14. I disagree. As explained above, Edwards has plausibly alleged that FCA fraudulently concealed information regarding the stalling defect from him so that he would purchase the Jeep. Edwards established that FCA had an independent duty to disclose information to him, and that he sustained damages as a result of the fraud. These allegations are separate and distinct from his breach of contract claims and give rise to tort liability.

As a result, I **DENY** FCA's motion to dismiss Edwards'ss sixth cause of action.

### III.  PUNITIVE DAMAGES

Finally, FCA moves to strike or dismiss Edwards'ss claim for punitive damages because it "fails with the fraud claims and should be denied and/or stricken as a matter of law." MTD at 6, 16.

As an initial matter, a motion to strike is an improper procedural vehicle to attack Edwards's claim for punitive damages. The Ninth Circuit has held that Rule 12(f) "does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010). Courts in this District have extended this rule to requests for punitive damages. *See Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 272–73 (N.D. Cal. 2015) (denying motion to strike because "Defendants' first argument—that [p]laintiffs cannot recover punitive damages as a matter of law—fails because it is expressly precluded by the Ninth Circuit's holding in *Whittlestone, Inc. v. Handi–Craft Co.*"); *Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 996 (N.D. Cal. 2012) (applying *Whittlestone* and denying defendant's Rule 12(f) motion to strike the portions of Plaintiff's amended complaint that mention punitive damages); *cf. Linares v. CitiMortgage, Inc.*, 14-cv-3435-EMC, 2015 WL 2088705, at *8 (N.D. Cal. May 5, 2015) (relying on *Whittlestone* and construing Rule 12(f) motion to strike punitive damages as motion to dismiss). I therefore **DENY** FCA's motion to strike Edwards's claim for punitive damages as foreclosed by *Whittlestone*.

13

Turning to the motion to dismiss analysis, I conclude that at this stage, Edwards has plausibly alleged his entitlement to punitive damages. California law allows for the imposition of punitive damages where the plaintiff proves by clear and convincing evidence that the defendant has committed fraud. *See* Cal. Civ. Code § 3294(a)(3). Because I conclude that Edwards has plausibly alleged that FCA committed fraud, I **DENY** FCA's motion to dismiss Edwards's claim for punitive damages.

## CONCLUSION

For the foregoing reasons, FCA's motion to dismiss Edwards's sixth claim for "Fraudulent Inducement – Concealment" is **DENIED**, and FCA's motion to dismiss or strike Edwards's claim for punitive damages is also **DENIED.**

**IT IS SO ORDERED.**

Dated: June 2, 2022



William H. Orrick
United States District Judge